IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

             Respondent,             No. 2:06-cr-0236 GEB KJN P

    vs.

FRANCISCO VEGA,                ORDER AND

             Movant.          FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Movant is a federal prisoner proceeding without counsel with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  In 2010, movant pled guilty to possession with the intent to distribute methamphetamine.  He seeks post-conviction relief alleging that defense counsel was ineffective at sentencing.  For the reasons set forth below, the court finds that the motion should be denied.

II.  Background

        Movant was born in 1975 in El Salvador, but is a permanent legal resident of Mexico.  (Pre-Sentence Report ("PSR") at 2.)  He moved to California with his parents and siblings when he was one year old.  (PSR at 9.)  Movant had permanent resident status in the United States since December 3, 1990, and his resident alien green card showed an expiration

1

date of September 18, 2011, at the time of his pre-sentence interview.  (PSR at 9-10.)  Movant

was married, and had a five year old son.  (PSR at 9.)  Movant worked for his brother-in-law in

his construction business.  (Id.)  From earlier relationships, movant had two minor children who

resided with their respective mothers.  (PSR at 10.)

On May 30, 2006, movant was charged with four criminal counts:  conspiracy to

distribute and possess with intent to distribute at least 50 grams of methamphetamine (actual),

distribution of at least 50 grams of methamphetamine, distribution of at least 5 grams of

methamphetamine, and possession with intent to distribute at least 50 grams of

methamphetamine.  (Dkt. No. 1.)  On November 20, 2009, movant entered into a plea agreement

(dkt. no. 64), and pled guilty to count four of the indictment:  possession with the intent to

distribute at least 50 grams of methamphetamine (actual), in violation of 21 U.S.C. § 841(a)(1).

On November 24, 2009, the court issued the schedule for disclosure of the PSR

and for filing objections.  (Dkt. No. 66.)  The schedule provided for the disclosure of the

proposed PSR to counsel no later than December 31, 2009, and for objections to be delivered no

later than January 8, 2010.  (Id.)  Motions for correction of the PSR were due no later than

January 22, 2010.  (Id.)  Neither party filed motions for correction.  Movant did not file a motion

to withdraw his plea.

On March 26, 2010, the first three counts of the indictment were dismissed, and

movant was sentenced in open court to the mandatory minimum sentence of 120 months, or ten

years.  (Dkt. Nos. 75, 77.)  On April 8, 2010, a judgment and commitment was filed, stating that

judgment was imposed on March 26, 2010.  (Dkt. No. 77.)  Movant did not appeal the

conviction, but on March 31, 2011, filed the instant motion to vacate, set aside or correct his

sentence under 28 U.S.C. § 2255.  Respondent filed an opposition (dkt. no. 100), and movant

filed a reply (dkt. no. 107).  The motion was stayed on December 6, 2012, pending the Supreme

Court's ruling on the issue of retroactivity in United States v. Chaidez, 2012 WL 1468539 (Apr.

30, 2012).  (Dkt. No. 123.)

By order filed March 19, 2013, the stay was lifted, and movant was directed to show cause why his motion pursuant to 28 U.S.C. § 2255 should not be denied based on Chaidez v. United States, 133 S. Ct. 1103 (2013) ("Chaidez"). In Chaidez, the Supreme Court held that Padilla v. Kentucky, 130 S. Ct. 1473 (2010), is not retroactively applicable to cases on collateral review, and thus, defendants whose convictions became final prior to the Padilla decision cannot benefit from its ruling. Chaidez, 133 S. Ct. at 1103. On April 1, 2013, movant filed a motion for summary judgment, without reference to Chaidez, standing on his motion and reply. (Dkt. No. 125 at 1.) On May 1, 2013, movant filed an untimely response to the order to show cause, claiming that Chaidez has no bearing on the motion because the retroactivity bar does not apply when challenging a federal conviction, citing Chaidez, 133 S. Ct. at 1113 n.16. (Dkt. No. 130 at 1-2.) No additional briefing was filed by respondent.

III.  The Parties' Arguments

Movant contends that counsel was ineffective by allegedly misinforming movant, prior to entry of the plea, that deportation would not be a collateral consequence of movant's guilty plea. Movant argues that although the PSR mentioned the possibility of deportation proceedings, counsel did not object, and the issue of deportation was not raised before or during the guilty plea, by counsel or the government. Movant relies on Padilla v. Kentucky, 130 S. Ct. 1473 (2010), arguing that defense counsel's representation was deficient based on counsel's failure to inform movant that the plea agreement carried a risk of deportation, because it deprived movant of the opportunity to craft a plea bargain that could reduce the likelihood of deportation. (Dkt. No. 91 at 9.) Movant argues that he would not have pled guilty had he known the true consequences of his plea. (Dkt. No. 91 at 23.) Further, movant contends that had he been aware, he could have negotiated a different plea. (Id.) Movant argues that he is married to a United States citizen, and has strong ties to family and a social community here. (Id.) But for defense counsel's unprofessional errors, movant states he would have "insisted on going to trial." (Id.)

////

1    Respondent contends that movant waived his right to file a § 2255 motion, which

2    precludes consideration of the motion.  In the alternative, respondent argues that movant failed to

3    demonstrate prejudice because movant's immigration status played no role in the decision to

4    plead guilty, movant was sentenced to the mandatory minimum sentence for count four, and

5    movant faced overwhelming evidence of guilt and a significantly longer sentence if movant

6    chose to go to trial.  Respondent argues that Padilla is not retroactive,[1] relying on Teague v. Lane,

7    489 U.S. 288 (1989), and that because movant entered his guilty plea on November 20, 2009,

8    prior to Padilla, defense counsel could not have known the new rule announced in Padilla, and

9    thus it could not form the basis for deficient performance.  Finally, to the extent movant contends

10   the district court erred in failing to advise movant of the possibility of deportation, respondent

11   counters that Rule 11 and due process do not require a district court to inform a defendant of the

12   immigration consequences of a plea.  United States v. Delgado-Ramos, 635 F.3d 1237, 1239 (9th

13   Cir. 2011), United States v. Amador-Leal, 276 F.3d 511 (9th Cir. 2002), overruled on other

14   grounds by Padilla, 130 S. Ct. at 1484.

15   In reply, movant argues that Padilla is retroactively applied, arguing that courts

16   have either applied it retroactively or declared it to be retroactive.  (Dkt. No. 107 at 4.)  Movant

17   argues that the inaccurate advice defense counsel gave movant caused him to suffer almost

18   certain deportation and separation from his loved ones, who are United States citizens, which is

19   devastating to movant.  (Id. at 7.)  Movant contends that if it wasn't for his counsel's errors, "the

20   entire proceeding would have been different."  (Id.)

21   ////

22   ////

23

24   [1]  When the instant motion was filed, the Circuits were split on Padilla's retroactivity: United States v. Orocio, 645 F.3d 630 (3rd Cir. 2011) (retroactive); United States v. Chang Hong, 2011 WL 3805763 (10th Cir. 2011) (not retroactive).  As set forth above, the Supreme

25   Court found that Padilla set forth a new constitutional rule of criminal procedure and was not retroactive to defendants whose convictions became final before Padilla issued.  Chaidez, 133 S.

26   Ct. at 1103.

1   IV.  Legal Standards

2          Under 28 U.S.C. § 2255, a court may grant relief to a federal prisoner who

3   challenges the imposition or length of his or her incarceration on the ground that:  (1) the

4   sentence was imposed in violation of the Constitution or laws of the United States; (2) the court

5   was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum

6   authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C.

7   § 2255(a).  A movant must allege specific facts that, if true, entitle the movant to relief.  See

8   United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004); United States v. Rodrigues, 347

9   F.3d 818, 824 (9th Cir. 2003) (citation omitted).  A judge may dismiss a § 2255 motion if "it

10  plainly appears from the motion, any attached exhibits, and the record of prior proceedings that

11  the moving party is not entitled to relief."  Rule 4(b), Section 2255 Rules.

12  V.  Discussion

13          a.  Waiver

14          Movant's written plea agreement contained an express waiver of his right to

15  collaterally attack his guilty plea and sentence.[2]  When movant changed his plea to guilty, he

16  acknowledged that he was waiving his right to file a motion pursuant to 28 U.S.C. § 2255.  (Dkt.

17  No. 100-2 at 10-11.)

18          A defendant may waive the statutory right to bring a § 2255 action.  United States

19  v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th

20  Cir. 1992).  A waiver of the right to file a § 2255 motion made pursuant to a negotiated plea

21  agreement is enforceable except with respect to a claim that the plea was involuntary or entered

22  into unintelligently.  See Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005) (a plea

23  agreement that waives the right to file a federal habeas petition pursuant to § 2254 is

24  unenforceable with respect to an ineffective assistance of counsel claim that challenges the

25  ─────────────────────

26          [2]  The plea agreement states, "[h]e specifically agrees not to file a motion under 28 U.S.C.
§ 2255 or § 2241 attacking his conviction or sentence."  (Dkt. No. 100-1 at 8 of 12.)

1  voluntariness of the waiver); Pruitt, 32 F.3d at 433 (expressing doubt that a plea agreement could

2  waive a claim that counsel erroneously induced a defendant to plead guilty or accept a particular

3  plea bargain); Abarca, 985 F.2d at 1014 (expressly declining to hold that a waiver forecloses a

4  claim of ineffective assistance or involuntariness of the waiver).

5            Here, movant's ineffective assistance of counsel claim potentially implicates the

6  voluntariness of his plea agreement.  Movant claims defense counsel misinformed movant that he

7  would suffer no deportation consequences if movant pled guilty.  Accordingly, the undersigned

8  declines to recommend that the instant action is barred by movant's waiver.

9            b.  Barred by Chaidez?

10           Respondent argues that the present motion is barred by Chaidez because movant

11 pled guilty in 2009, prior to the decision in Padilla.  However, as set forth above, the Supreme

12 Court found that Padilla does not apply retroactively to individuals whose convictions became

13 final before the Supreme Court decided Padilla.  Chaidez, 133 S. Ct. at 1107.  Thus, in order to

14 determine whether plaintiff's reliance on Padilla is barred by Chaidez, the court must determine

15 if movant's conviction was final when Padilla issued.  Neither party addressed this issue.

16           In 28 U.S.C. § 2255, the term "final" is not defined.  Id.  In the context of habeas

17 review, the Supreme Court has held that a conviction is final when "a judgment of conviction has

18 been rendered, the availability of appeal exhausted, and the time for a petition for certiorari

19 elapsed or a petition for certiorari finally denied."  Griffith v. Kentucky, 479 U.S. 314, 321 n.6

20 (1987).  In 2003, the United States Supreme Court held that a federal criminal conviction

21 becomes final, for purposes of calculating the one-year statute of limitations in § 2255 cases,

22 when the time expires for filing a petition for certiorari contesting the appellate court's

23 affirmation of conviction.  Clay v. United States, 537 U.S. 522, 525 (2003); United States v.

24 Garcia, 210 F.3d 1058, 1060 (9th Cir. 2000) (held that the conviction became final when the time

25 for filing the petition for writ of certiorari expires).  Later, again in the context of determining the

26 statute of limitations period, the Ninth Circuit "adopted, for § 2255 purposes, the definition of

6

finality set forth in 28 U.S.C. § 2244(d)(1) which is applicable to state prisoners seeking federal habeas relief," and found that the defendant's conviction was final "upon the expiration of the time during which she could have sought review by direct appeal. <u>United States v. Schwartz</u>, 274 F.3d 1220, 1223 (9th Cir. 2001).

In light of such authority, the court adopts this rationale for determining when movant's conviction became final, and finds that because movant did not file an appeal, his judgment of conviction became final upon the expiration of the time for filing an appeal from his conviction.[3] Here, movant was sentenced in open court on March 26, 2010, but judgment was entered on April 8, 2010. In a criminal case, a notice of appeal must be filed within fourteen days of the court's entry of judgment. Fed. R. App. P. 4(b)(1)(A). Because movant did not file an appeal, movant's judgment was final on Thursday, April 22, 2010, fourteen days after judgment was entered on April 8, 2010.

The Supreme Court issued its decision in <u>Padilla</u> on March 31, 2010, prior to April 22, 2010, the date movant's federal conviction became final.[4] Thus, movant is not barred from relying on <u>Padilla</u>.

### c. Ineffective Assistance of Counsel

As set forth above, movant claims that defense counsel told movant that deportation would not be a collateral consequence of his guilty plea. Movant relies on <u>Padilla</u>, 130 S. Ct. at 1473, to support his claim of ineffective assistance of counsel. At the time of sentencing, movant was 34 years old.

////

////

---

[3] As of this writing, the court was unable to find a Ninth Circuit case addressing the issue of finality in the context of an ineffective assistance of counsel claim based on <u>Padilla</u>.

[4] Although it is of no consequence here, the framework in <u>Teague</u> does apply to collateral attacks on federal convictions. <u>See United States v. Sanchez-Cervantes</u>, 282 F.3d 664, 667 (9th Cir. 2002) (<u>Teague</u> applies to federal prisoners).

i. Standards

The standard for an ineffective assistance of counsel claim is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  First, movant must show that his counsel's representation fell below an "objective standard of reasonableness."  Id. at 688.  This is a deferential standard in which the "distorting effects of hindsight" must be avoided.  Id. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and it is movant's burden to overcome the presumption that the challenged action was sound trial strategy.  Id. at 689.  Second, movant must establish that prejudice resulted from his counsel's faulty performance.  Id. at 692.  To do so, movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Where a defendant pled guilty and is asserting ineffective assistance of counsel, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  Movant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Whether prejudice has been demonstrated under Strickland depends on the facts of a particular case.  "[T]o obtain relief on this type of claim, a [movant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Padilla, 130 S. Ct. at 1485, citing Roe v. Flores-Ortega, 528 U.S. 470, 480-481 (2000).  Thus, only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have rejected the plea offer and insisted on going to trial.

The evidence of guilt and the potential sentence if convicted at trial compared to the consequences of a guilty plea are factors to be considered and, for a defendant who is an American citizen, may be the determinative factors in deciding to accept a plea offer.  But for a defendant who is not an American citizen, and, particularly a legal permanent resident facing

1   deportation, the "stakes are . . . high and momentous." Delgadillo v. Carmichael, 332 U.S. 388,

2   391 (1947).  It is the "equivalent of banishment or exile."  Id.  The Court in Padilla, stressed that

3   preserving the noncitizen defendant's right to remain in the United States "may be more

4   important to the [defendant] than any jail sentence."  Padilla, 130 S. Ct. at 1483 (quoting I.N.S.

5   v. St. Cyr, 533 U.S. 289, 322-23 (2001)).

ii.  Discussion

7          Jose Padilla was a native of Honduras, but had been a lawful permanent resident

8   of the United States for over 40 years.  Padilla, 130 S. Ct. at 1477.  Padilla had served with honor

9   in the U.S. Armed Forces during the Vietnam War, but faced deportation after pleading guilty to

10  the transportation of a large amount of marijuana in his tractor-trailer in Kentucky.[5]  Id.  In

11  Padilla, the defendant claimed that his counsel not only failed to advise him of the possible

12  deportation consequences of his guilty plea, but told Padilla that he "did not have to worry about

13  immigration status since he had been in the country so long."  Id. 130 S. Ct. at 1478.  Padilla's

14  claim before the Kentucky Supreme Court was denied on the ground that because deportation is a

15  collateral consequence, and not a direct consequence, of the guilty plea, movant was not

16  protected by the Sixth Amendment's effective assistance of counsel requirement.  Id.  The United

17  States Supreme Court disagreed, and held that Padilla's claim was subject to review under

18  Strickland, 466 U.S. at 668, both as to Padilla's claim that counsel offered affirmative misadvice,

19  but also as to alleged omissions by defense counsel.  Padilla, 130 S. Ct. at 1483.  Specifically, the

20  court in Padilla held that counsel's failure to advise defendant that his guilty plea would subject

21  him to deportation satisfied the first prong of Strickland.  Id. at 1486-87.  The court in Padilla

22  remanded the case to determine whether Padilla could demonstrate prejudice under Strickland

23  "because it was not passed on below."  Padilla, 559 U.S. at 1487.

24  _____

25        [5]  The Kentucky Supreme Court noted that Padilla was indicted for trafficking in more
    than five pounds of marijuana, possession of marijuana, possession of drug paraphernalia, and
    operating a tractor/trailer without a weight and distance tax number.  Com. v. Padilla, 253 S.W.

26  3d 482 (Ky. 2008), reversed and remanded by Padilla, 130 S. Ct. at 1473.

1   Here, movant was a lawful permanent resident of the United States since

2   December 3, 1990 (PSR at 10), almost twenty years, but had resided in the United States since he

3   was one year old, almost 33 years.  As in Padilla, movant also contends that defense counsel

4   misadvised movant as to the deportation consequences of his guilty plea.  Movant also argues

5   that deportation would be devastating to him and his family.

6   Thus, movant's claim under the first prong of Strickland is similar to the claim

7   addressed in Padilla.  As argued by respondent, the decision in Padilla did not issue until after

8   movant entered his guilty plea on November 20, 2009.  Therefore, defense counsel could not be

9   aware of the new rule announced in Padilla:  that defense counsel was under an obligation to

10   advise movant of the deportation consequences of his guilty plea.

11   Movant does not indicate when he allegedly became aware that he is subject to

12   deportation following completion of his ten year sentence.  Movant claims he was misadvised

13   about the deportation consequences prior to the entry of his guilty plea.  Movant states that "the

14   'P.S.R.' [Pre-Sentence Report] mentioned the possibility of deportation proceedings on pg. 18."

15   (Dkt. No. 91 at 19.)  However, the PSR states:

16   Pursuant to 18 U.S.C. § 3583(d)(3), upon completion of the term
     of imprisonment, the defendant is to be surrendered to a duly
17   authorized Immigration official for deportation proceedings in
     accordance with the established procedures provided by the
18   Immigration and Nationality Act. . . .

19   (PSR at 18.)  The schedule for issuing and reviewing the PSR provides for deadlines for

20   providing the PSR to counsel, and for the filing of objections.  (Dkt. No. 66.)  Movant does not

21   argue that defense counsel did not review the PSR with movant prior to sentencing.  These facts

22   suggest movant was aware of the possibility of deportation prior to his sentencing.

23   A court need not hold an evidentiary hearing if the allegations are "palpably

24   incredible or patently frivolous," or if the issues can be conclusively decided on the basis of the

25   evidence in the record.  See Blackledge v. Allison, 431 U.S. 63, 76 (1977); see also United States

26   v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to

1   deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that

2   the movant is not entitled to relief").

3          Even if this court accepts movant's factual assertions as true, without making any

4   actual finding, movant cannot prevail.  Because the court finds that movant failed to meet the

5   prejudice prong of <u>Strickland</u>, as discussed more fully below, the court need not hold an

6   evidentiary hearing to determine whether defense counsel advised, misadvised, or failed to advise

7   movant as to the deportation consequences of the plea.  For that reason, this court finds no reason

8   to conduct a hearing.

9          The court turns now to the prejudice prong of <u>Strickland</u>.  As set forth above,

10  movant must show that but for counsel's errors, there is a reasonable probability that he would

11  not have pled guilty and would have insisted on going to trial, factoring in the heavy consequence

12  of almost certain deportation.  In other words, movant must demonstrate that he had a rational

13  reason to go to trial.  <u>Padilla</u>, 130 S. Ct. at 1485.

14         Review of movant's plea colloquoy reflects that movant entered into a knowing,

15  intelligent, and voluntary plea, and was fully informed of his rights, as well as the direct

16  consequences of his guilty plea.  (Dkt. No. 100-2.)  As argued by movant, there is no mention of

17  potential deportation consequences in the change of plea transcript.  (Dkt. No. 100-2.)  In

18  exchange for movant's guilty plea, the government agreed "not to oppose a three-level reduction

19  in offense level" based on movant's acceptance of responsibility, to recommend a sentence

20  within the applicable guideline range, and not to file or present additional counts to the grand

21  jury based upon the loaded firearm seized at movant's residence, which would have increased the

22  offense level by two levels.  (<u>Id.</u> at 12.)  Movant was warned that he "could be placed in prison

23  for the rest of [his] life."  (<u>Id.</u> at 12.)

24         The evidence against movant was overwhelming.  At the time of movant's arrest,

25  evidence of movant's involvement in the distribution and sale of methamphetamine was seized,

26  including a scale commonly used for weighing narcotics, as well as 191.5 grams of actual

1   methamphetamine, currency, and a loaded firearm. (Dkt. No. 100-2 at 17-18.) Also, movant's

2   home was equipped with a working surveillance camera which showed the driveway of the

3   home. (Id. at 18.) "It appeared to agents that [movant] had attempted to flush the

4   methamphetamine." (Dkt. No. 100-1 at 12.) Based on this evidence, it was unlikely movant

5   would have prevailed at trial.

6         Other than simply stating that movant "could have" negotiated a plea bargain that

7   would have diminished the likelihood of his deportation, movant presents no evidence

8   demonstrating how he could have negotiated an improved deal in the face of such overwhelming

9   evidence. Unlike the movant in Song v. United States, 2011 WL 2533184 (C.D. Cal. 2011),

10  movant did not demonstrate that he possessed information helpful to the prosecution. Movant

11  alleges no facts showing that the court would be inclined to reduce movant's sentence below the

12  ten year minimum mandatory sentence on count four, particularly in light of the dismissal of the

13  other three charges, and the potential firearm charges. See United States v. Castillo-Magdaleno,

14  2013 WL 1289096, *7 (E.D. Wash. 2013) ("There is no evidence that Mr. Castillo would have

15  been sentenced to a lesser period of incarceration regardless of anything that defense counsel

16  could have done.")

17        In addition, movant alleged no facts suggesting that he would be subject to either

18  imprisonment or death if he is deported to Mexico. See Downs-Morgan v. United States, 765

19  F.2d 1534, 1540-41 & n.15 (11th Cir. 1985) (held that affirmative misrepresentation regarding

20  immigration consequences may constitute ineffective assistance where the defendant faces

21  "imprisonment and execution" if deported to Nicaragua). Also, in contrast to the defendant in

22  Downs-Morgan, movant has not pled a colorable claim of actual innocence.[6]

23

24        [6] Other courts have found that a defendant cannot satisfy Strickland's prejudice prong
    when "the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the
25  defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it;
    and [the defendant] never moved to withdraw his guilty plea." Abraham v. United States, 699
26  F.3d 1050, 1053 (8th Cir. 2012), quoting Correa-Gutierrez v. United States, 455 Fed. Appx. 722,
    723 (9th Cir. 2012) (unpublished per curiam). Here, the PSR expressly states that movant must

1   Moreover, movant was sentenced to the mandatory minimum sentence of ten

2   years on count four alone.  Regardless of movant's immigration status, arguably counsel could

3   not have negotiated a sentence less than ten years.  Cf. United States v. Kwan, 407 F.3d 1005

4   (9th Cir. 2005) (in addressing the petition for writ of error *coram nobis*, the Ninth Circuit stated

5   that "[u]nder the Sentencing Guidelines, the sentencing range for Kwan's conviction was 18-24

6   months imprisonment; however, Kwan was potentially eligible for various downward

7   adjustments that, if granted, could reduce his sentence to less than one year."), overruled on other

8   grounds by Padilla, 130 S. Ct. at 1484.  The record reflects that movant's offense level was

9   lowered by three levels based on his remorse.  However, movant points to no facts other than his

10  potential deportation demonstrating his eligibility for a downward adjustment to his sentence.  As

11  argued by respondent, under mandatory sentencing guidelines, the Ninth Circuit has held that

12  deportation alone is not a ground for downward departure because "the possibility of deportation

13  does not speak to the offense in question, nor does it speak to the offender's character."  United

14  States v. Alvarez-Cardenas, 902 F.2d 734, 737 (9th Cir. 1990) ("A defendant's crime is no less

15  serious, nor is his history of past actions changed because he may be subjected to deportation

16  proceedings at some point in the future.")  The Ninth Circuit also stated that "were we to find

17  that merely being an alien who is subject to possible deportation should affect a sentencing

18  decision, we would be treating aliens differently simply because they are not citizens of this

19  country."  Id.

20  Also, had movant opted to proceed to trial, he faced the prospect of a far longer

21  prison sentence.  Indeed, the maximum penalty movant faced on count four alone was life in

22  prison.  (Dkt. No. 100-2 at 12.)  In addition, three counts were dismissed in exchange for his

23  _____

24  surrender to an Immigration official for deportation proceedings upon the completion of his term
    of imprisonment.  (PSR at 18.)  However, neither party submitted the transcript from movant's
    sentencing hearing, and while the motion suggests movant had a copy of the PSR, there is

25  insufficient evidence in the record to find that movant read the PSR, discussed it with defense
    counsel, and understood it.  Because the court addresses prejudice on alternative grounds, it is

26  not necessary to hold an evidentiary hearing to further develop the record in this regard.

guilty plea.  The PSR reflected that the respondent had evidence that movant supplied

methamphetamine sold to a DEA confidential source ("CS") on March 1, 2006 (65.4 grams) and

March 15, 2006 (45.6 grams), and that surveillance followed the CS to movant's residence in Elk

Grove.  (PSR at 5; Dkt. No. 91 at 15.)  Had movant chosen to go to trial, he would have faced all

four counts, including an increased amount of methamphetamine he possessed and that he was

responsible for,[7] additional charges based on the loaded firearm seized from movant's home, and

the increased punishment attendant to these changes.  Given the overwhelming evidence of

movant's guilt, and the much longer sentence he faced had movant opted to go to trial, it would

not be rational for movant to choose to go to trial rather than accept the plea offer to plead guilty

to only count four, despite the threat of deportation.  See Cuevas v. United States, 2013 WL

655082, *4 (S.D. N.Y. 2013) ("there is no indication that Cuevas's sentence following a

conviction at trial would have been anything less than life imprisonment.") (internal citation

omitted).

Finally, returning to the case of Jose Padilla, the reasoning supporting the final

resolution of Padilla's prejudice claim following remand offers movant no relief.  Padilla v.

Com., 381 S.W.3d 322 (Ky. App. 2012).[8]  The Court of Appeals of Kentucky reversed the state

court's finding that Padilla suffered no prejudice.  Id.  The appellate court set forth the

circumstances of Padilla's arrest:

> In 2001, Padilla was at an Interstate 65 weigh station in Hardin
> County when an inspector noticed that Padilla did not have a KYU
> number and appeared nervous. The inspector also observed that
> Padilla was "off route." During a consensual search of the truck
> cab, marijuana and drug paraphernalia were found and Padilla was
> arrested.

---

[7]  The PSR reflects that the DEA lab analyzed the methamphetamine seized at movant's
residence and found it to be 191.5 grams.  (PSR at 6.)  Thus, movant was responsible for a total
of 302.5 grams of actual methamphetamine (191.5 grams, plus the 65.4 grams and 45.6 grams
supplied for the sale to the CS).  (Id.)

[8]  A copy of Padilla v. Com., supra, is appended to these findings and recommendations.

> Upon opening the tractor-trailer truck's doors, a box fell and tore. The police contend that the box revealed only a white styrofoam inner package while Padilla contends that drugs were plainly visible. According to Padilla, after the drugs were visible, he was asked what was in the load and responded "maybe, drugs." The police contend that the question was asked and answered before the drugs were visible. It is not disputed that a search of the truck revealed a substantial quantity of marijuana.

Padilla v. Com., 381 S.W.3d at 327.  During the evidentiary hearing below, Padilla testified, *inter alia*, that he had no knowledge that he was transporting marijuana, he was a self-employed tractor-trailer owner who obtained loads through several brokers, and had no right to inspect the load's contents, and checked only for its quantity and weight.  Id.  Padilla testified that he pled guilty only because his wife and child were distraught over his potential prison sentence, and that he was "completely unaware that he would be deported and had been told by his trial counsel that deportation was not an issue because of his long-term residency in the United States."  Id.  Padilla stated he would have insisted on going to trial "because deportation was the same as 'putting a gun' to his head.'"  Id.  Padilla's defense counsel testified, *inter alia*, that counsel believed Padilla was an illegal alien, but that because Padilla was a veteran who had lived in the United States for over forty years, Padilla would not be deported.  Id.  Padilla's wife testified that Padilla's defense counsel told her deportation was not an issue based on Padilla's military service and long residence in the United States.  Id. at 328.  Padilla's daughter testified that there was no discussion about deportation, and that prior to accepting the guilty plea, Padilla maintained he was innocent and insisted on going to trial.  Id.

> The Court of Appeals of Kentucky found that:

> Although the evidence against Padilla is strong, it is far from conclusive. A reasonable jury could find that Padilla was unaware that the load he transported contained marijuana and acquit him of the deportable offense.FN3 Padilla testified that he had no right to inspect the contents of the load he transported and was unaware that he was transporting marijuana. Under the facts, it would be reasonable for counsel to argue to a jury that Padilla's actions were inconsistent with a person who had knowledge of the load's contents. Arguably, had he known, he would have paid Kentucky's

> road taxes to avoid an investigative stop and possible search.
> Moreover, a reasonable juror could conclude that if Padilla was
> aware of the substantial amount of marijuana he was transporting,
> he would have placed it securely in the front of the trailer behind
> the legal load he transported, instead of the rear where it would be
> revealed merely upon opening the trailer's doors.

> [FN3. To be found guilty of trafficking, a jury
> would have to find that Padilla knowingly trafficked
> in marijuana. KRS 218A.1421.]

Padilla v. Com., 381 S.W.3d at 330.

Moreover, the Court of Appeals of Kentucky found that Padilla only faced a ten

year maximum sentence if he was tried and convicted.  Id.  Padilla testified that he accepted the

plea bargain only because he believed he would not be deported and would be released on parole.

Id.  Under the plea agreement, Padilla was "sentenced to ten years' imprisonment, with five years

to serve and five years probated."[9]  Id.  But Padilla later learned that he was not only facing

deportation, but that he was not eligible for parole, and was required to serve the entire ten year

sentence.  Id.  Thus, Padilla had not received the benefit of his plea bargain.  Because of Padilla's

unique circumstances, the appellate court found that it was rational for Padilla to opt to go to

trial.  Id.

The facts surrounding Padilla's arrest, and the testimony of Padilla, his counsel,

and his family members, distinguish Padilla from movant's case.  Here, movant offered no

reasonable argument that defense counsel could have made to a jury which suggested a

reasonable probability that the outcome would change.  Indeed, the evidence movant faced was

overwhelming and conclusive.  Moreover, unlike Padilla, movant did not face a ten year

maximum sentence.  Rather, movant faced a maximum sentence of life in prison.  Unlike Padilla,

movant offered no facts demonstrating that it would be rational, given the overwhelming

evidence of movant's guilt, and the additional charges he would face, for movant to forego the

---

[9]  Given the context, it appears that the court may have intended to use the word "paroled," rather than the word "probated."  See id.

16

plea agreement and risk going to trial, particularly where he would face life in prison.  Finally, movant points to no defects in the plea agreement, as were contained in Padilla's plea agreement, that would support a finding that movant was deprived of the benefit of his plea agreement.

For all of the above reasons, movant cannot establish that had he been aware of the deportation consequences[10] of his guilty plea, movant would have opted not to plead guilty and proceed to trial, or that it would be rational for movant to do so.  While movant is understandably devastated by the possibility of being deported, movant faced deportation whether he pled guilty or opted to go to trial based on the nature of the criminal charges and the overwhelming evidence against him.  Because movant failed to demonstrate prejudice under Strickland, the motion should be denied.

### d. Court's Failure to Advise

Finally, to the extent movant argues that the court should have advised movant as to the immigration consequences of the guilty plea, Rule 11 of the Federal Rules of Criminal Procedure and due process did not require the district court to inform movant of the immigration consequences of his plea.  Delgado-Ramos, 635 F.3d at 1239, Amador-Leal, 276 F.3d at 511. Thus, this claim is unavailing.

### VI.  Motion for Summary Judgment

Because movant failed to demonstrate prejudice under Strickland, movant's motion for summary judgment should also be denied.

### VII.  Conclusion

Accordingly, IT IS HEREBY ORDERED that the order to show cause (dkt. no. 124) is discharged; and

---

[10]  As noted by respondent, movant is not yet deportable, but is subject to deportation, and may be removed from this country only after receiving due process and a hearing before an Immigration Judge.  8 U.S.C. § 1229.  In those proceedings, movant may contest deportation.

1    IT IS RECOMMENDED that:

2        1.  Movant's motion to vacate, set aside, or correct his sentence pursuant to 28

3    U.S.C. § 2255 (dkt. no. 91) be denied;

4        2.  Movant's motion for summary judgment (dkt. no. 125) be denied; and

5        3.  The clerk of the court be directed to close the companion civil case 2: 11-cv-

6    0872 GEB KJN.

7        These findings and recommendations are submitted to the United States District

8    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

9    days after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections,

12   he shall also address whether a certificate of appealability should issue and, if so, why and as to

13   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

14   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

15   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

16   service of the objections.  The parties are advised that failure to file objections within the

17   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

18   F.2d 1153 (9th Cir. 1991).

19   DATED:  May 14, 2013

20

21                                          Kendall J. Newman

22                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE

23   vega0236.257

24

25

26

                                            18

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

**H**

Court of Appeals of Kentucky.

**Jose PADILLA**, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–CA–000553–MR.

Sept. 28, 2012.

**Background:** Defendant, who pleaded guilty to various marijuana-related charges, including trafficking in more than five pounds of marijuana, filed a motion for post-conviction relief. The Hardin Circuit Court denied the motion. Defendant appealed. The Court of Appeals reversed and remanded, and the Commonwealth appealed. The Kentucky Supreme Court, 253 S.W.3d 482, reversed. Certiorari was granted. The United States Supreme Court, ––– U.S. –––, 130 S.Ct. 1473, 176 L.Ed.2d 284, reversed and remanded. Upon remand, the Hardin Circuit Court, Kelly Mark Easton, J., denied defendant's motions for relief, and defendant appealed.

**Holding:** The Court of Appeals, Thompson, J., held that defendant demonstrated that if he had been properly informed of the immigration consequences of his guilty plea, he would have insisted on going to trial and that his decision would have been rational under the circumstances.

Conviction vacated.

West Headnotes

**[1] Criminal Law 110 ⚷ 1870**

110 Criminal Law

   110XXXI Counsel

      110XXXI(C) Adequacy of Representation

         110XXXI(C)1 In General

            110k1870 k. In general. Most Cited Cases

The right to counsel is the right to effective assistance of counsel. U.S.C.A. Const.Amend. 6.

**[2] Criminal Law 110 ⚷ 1920**

110 Criminal Law

   110XXXI Counsel

      110XXXI(C) Adequacy of Representation

         110XXXI(C)2 Particular Cases and Issues

            110k1920 k. Plea. Most Cited Cases

In the context of a guilty plea, the right to effective assistance of counsel is essential to a fair proceeding because the defendant forfeits many of the fundamental rights guaranteed by the Constitution. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 ⚷ 1920**

110 Criminal Law

   110XXXI Counsel

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

Defendant, a legal permanent resident of the United States, demonstrated that if he had been properly informed of the immigration consequences of his guilty plea to drug charges, he would have insisted on going to trial and that his decision would have been rational under the circumstances, and thus, he satisfied the second *Strickland* prong for claim of ineffective assistance of counsel; although the evidence against defendant was strong, it was far from conclusive, and defendant testified that pleading guilty and facing certain deportation was essentially "putting a gun" to his head and, if he had known of the deportation consequences, he would have insisted on going to trial. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ⟨key⟩   1920**
110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

In the context of a guilty plea, the proper inquiry for a claim of ineffective assistance of counsel is whether there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial; it is insufficient to merely state that with different advice, the defendant would not have insisted on going to trial. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 ⟨key⟩   1920**
110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

The test for ineffective assistance of counsel, in the context of a guilty plea, is objective, not subjective. U.S.C.A. Const.Amend. 6.

**[6] Criminal Law 110 ⟨key⟩   1920**
110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation
110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

With regard to claim of ineffective assistance of counsel in the context of a guilty plea, a reasonable probability exists if the defendant convinces the court that a decision to reject the plea bargain would have been rational under the circumstances; this standard of proof is somewhat lower than the common "preponderance of the evidence" standard. U.S.C.A. Const.Amend. 6.

**[7] Criminal Law 110 ⟨key⟩   1920**
110 Criminal Law
110XXXI Counsel
110XXXI(C) Adequacy of Representation

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

110XXXI(C)2 Particular Cases and Issues
110k1920 k. Plea. Most Cited Cases

In challenging his guilty plea based upon ineffective assistance of counsel, defendant had to demonstrate that his counsel's ineffective performance affected the outcome of the plea process; stated differently, defendant had to demonstrate that he rationally would have insisted on a trial, not that an acquittal at trial was likely. U.S.C.A. Const.Amend. 6.

**[8]** Criminal Law 110 ⟪⟫     1920
110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1920 k. Plea. Most Cited Cases

Whether prejudice has been demonstrated under *Strickland* in the context of a guilty plea depends on the facts of a particular case; only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have rejected the plea offer and insisted on going to trial. U.S.C.A. Const.Amend. 6.

**[9]** Criminal Law 110 ⟪⟫     1920
110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1920 k. Plea. Most Cited Cases

With regard to claim of ineffective assistance of counsel in the context of a guilty plea, the evidence of guilt and the potential sentence if convicted at trial compared to the consequences of a guilty plea are factors to be considered and, for a citizen defendant, may be the determinative factors in deciding to accept a plea offer; however, for a noncitizen defendant and, particularly a legal permanent resident facing deportation, the stakes are high and momentous. U.S.C.A. Const.Amend. 6.

**[10]** Criminal Law 110 ⟪⟫     1920
110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1920 k. Plea. Most Cited Cases

Although not the exclusive factor when determining whether a particular defendant's decision to insist on a trial would have been rational, with regard to claim of ineffective assistance of counsel in the context of a guilty plea, the immigration consequences of a guilty plea can be the predominate factor. U.S.C.A. Const.Amend. 6.

**\*323** Timothy G. Arnold (argued), Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Wm. Robert Long (argued), Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before DIXON, MOORE, and THOMPSON, Judges.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

*OPINION*

THOMPSON, Judge:

Jose Padilla appeals from two orders of the Hardin Circuit Court denying his motions for RCr 11.42 and CR 60.02 relief after his case was remanded by the Kentucky Supreme Court for an evidentiary hearing following the United States Supreme Court's decision in *Padilla v. Kentucky,* ——— U.S. ———, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The sole issue presented is whether the circuit court erred when it found that Padilla did not demonstrate prejudice by his trial counsel's failure to provide proper advice concerning the immigration consequences of his guilty plea and denied his request for relief. After careful consideration of the United States Supreme Court's decision, we conclude that Padilla demonstrated that if he had been properly informed of the immigration consequences of his guilty plea, he would have insisted on going to trial and that his decision would have been rational under the circumstances.

**\*324 BACKGROUND**

Padilla, a Honduras native, has been a lawful permanent resident of the United States for over forty years and served with honor as a member of the United States military during the Vietnam War. He resides in California with his wife, three disabled children and elderly mother-in-law. He has three adult children, one with his current wife, and two by a previous marriage. Since his arrival in the United States, he has spent only two weeks in Honduras.

In 2002, Padilla pleaded guilty to various marijuana-related charges, including trafficking in more than five pounds of marijuana. Pursuant to a plea agreement, he was sentenced to ten-years' incarceration, with five years to serve and five years probated. Because Padilla's trafficking crime is a deportable offense under 8 U.S.C.A. § 1227(a)(2)(b)(i), while in prison Padilla was served with an immigration detainer and, now released, faces deportation.

Prior to his release from prison, Padilla filed an RCr 11.42 motion requesting that his sentence be vacated because his trial counsel's misadvice concerning the immigration consequences of his plea constituted ineffective assistance of counsel in violation of his Sixth Amendment rights as pronounced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He further alleged that he would have insisted on going to trial if he had received correct advice from his trial counsel. Padilla requested an evidentiary hearing and appointment of counsel.

After the Hardin Circuit Court denied Padilla's RCr 11.42 motion without a hearing, Padilla appealed. This Court held that although collateral consequences do not have to be advised, counsel's erroneous advice concerning immigration consequences could constitute ineffective assistance of counsel and remanded Padilla's case to the circuit court for an evidentiary hearing.

The Kentucky Supreme Court reversed, holding that misadvice regarding immigration consequences of a guilty plea was a collateral matter and, therefore, could not be the basis for an RCr 11.42 motion. The United States Supreme Court granted Padilla's petition for writ of certiorari.

**THE PADILLA DECISION**

[1] The Supreme Court reviewed Padilla's ineffective assistance of counsel claim under the ambit of the Sixth Amendment to the United States Constitution. As stated in *Strickland,* "the right to counsel is the right to effective assistance of counsel." *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2063 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970)).

[2] In the context of a guilty plea, the right to effective assistance of counsel is essential to a fair proceeding because the defendant forfeits many of the fundamental rights guaranteed by the Constitution. Recognizing that ninety-seven percent of federal

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

convictions and ninety-four percent of state convictions result from guilty pleas, in *Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012), the Supreme Court emphasized defense counsel's responsibilities during the plea process.

The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours is for the most part a system of pleas, **\*325** not a system of trials ... it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. To a large extent ... horse trading between prosecutor and defense counsel determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system. Defendants who do take their case to trial and lose receive longer sentences than even Congress or the prosecutor might think appropriate, because the longer sentences exist on the books largely for bargaining purposes. This often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial. In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.

(internal quotations, citations and brackets omitted).

Despite the significance of effective assistance of counsel during the plea process, prior to *Padilla,* this Commonwealth held that the Sixth Amendment did not require that defense counsel advise a defendant of the deportation consequences of a guilty plea because such consequences were deemed "collateral" to the sentence. *Commonwealth v. Fuartado,* 170 S.W.3d 384 (Ky.2005). As noted by the *Padilla* Court, our Supreme Court was not alone in its view. *Padilla,* 130 S.Ct. at 1481 n. 9. Therefore, the Supreme Court accepted certiorari to decide, as a matter of federal law, whether Padilla's counsel had the obligation to advise Padilla that his guilty plea would result in his mandatory deportation from this country.[FN1]

> FN1. Because there is no debate that *Padilla* applies, we do not address whether the Court's decision applies to a defendant who entered a plea prior to the date it was rendered.

The Court rejected the view that there is a distinction between consequences of a guilty plea that are "direct" and those that are "collateral" in the context of immigration consequences. *Id.* at 1482. The Court explained that because under current immigration law deportation is nearly an automatic result for a broad class of noncitizen offenders, "accurate legal advice for noncitizens accused of crimes has never been more important." *Id.* at 1480. The Court recognized that deportation is not, in the strict sense, a criminal penalty, it is nevertheless a "severe penalty" inseparable from the conviction in the deportation context. *Id.* at 1481.

Although noting that Kentucky's plea form provides notice of possible immigration consequences, the Supreme Court held that Padilla's counsel had an obligation to advise him that the offense to which he pleaded guilty would result in deportation. In doing so, it reasoned:

Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. *Strickland* applies to Padilla's claim.

*Id.* at 1482.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

The Court then turned to the *Strickland* two-part test: (1) the performance prong—"whether counsel's representation fell below an objective standard of reasonableness,"***326** and (2) the prejudice prong—"whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1482 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (internal quotations omitted)).

Addressing the first *Strickland* prong, the Court concluded that Padilla sufficiently alleged constitutional deficiency. *Id.* at 1483. The Court noted that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* It described trial counsel's easy task:

Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of **marijuana** possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

*Id.* The court added that immigration laws can be complex and when the law is not succinct and straightforward, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* However, in Padilla's case, the deportation consequence was clear as was the duty to give correct advice. *Id.*

The Court declined to limit *Strickland* to the extent Padilla alleged affirmative erroneous advice regarding immigration consequences stating that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." *Id.* at 1484 (internal quotation marks omitted). In conclusion, the Court held:

It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the mercies of incompetent counsel. To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.

*Id.* at 1486 (internal quotation and citation omitted).

The Court expressly refrained from determining whether Padilla met the *Strickland* prejudice prong and remitted that issue to the Kentucky courts. *Padilla,* 130 S.Ct. at 1483–84. However, in response to the Solicitor General's concern that its decision would open the "floodgates" to vacating guilty pleas, the Court stressed that meeting Strickland's "high bar is never an easy task." *Id.* at 1485. Citing its decision in *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 486, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), it emphasized that even if the first *Strickland* prong is met, the defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.*

## PROCEEDINGS ON REMAND

On remand, the Commonwealth conceded that Padilla's trial counsel erroneously advised Padilla regarding the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

immigration*327 consequences of his guilty plea and that his misadvice constituted ineffective assistance of counsel. Although not an issue, the circuit court specifically found that Padilla had not been correctly advised and had satisfied the first *Strickland* prong. Therefore, our concern is with the second *Strickland* prong, and the evidence presented to establish that Padilla's decision to reject the plea offer and insist on a trial would have been rational under the circumstances.

The circuit court considered evidence concerning the circumstances of Padilla's arrest presented at a previous suppression hearing and at the RCr 11.42 hearing. Because the circuit court heavily relied on the evidence of Padilla's guilt, we describe the circumstances of his arrest.

In 2001, Padilla was at an Interstate 65 weigh station in Hardin County when an inspector noticed that Padilla did not have a KYU number and appeared nervous. The inspector also observed that Padilla was "off route." During a consensual search of the truck cab, **marijuana** and drug paraphernalia were found and Padilla was arrested.

Upon opening the tractor-trailer truck's doors, a box fell and tore. The police contend that the box revealed only a white styrofoam inner package while Padilla contends that drugs were plainly visible. According to Padilla, after the drugs were visible, he was asked what was in the load and responded "maybe, drugs." The police contend that the question was asked and answered before the drugs were visible. It is not disputed that a search of the truck revealed a substantial quantity of **marijuana**.

Padilla testified that he had no knowledge that he was transporting boxes of **marijuana** until the search. He explained that he was a self-employed tractor-trailer owner and obtained loads through several brokers. He had no right to inspect the load's contents and checked only for its quantity and weight. On the date of his arrest, he testified that he believed he was transporting a partial load of Nestle chocolates from California to Illinois and a second partial load of dehydrated abalone from California to Detroit. Although he had not planned on traveling through Kentucky, during his trip the tractor-trailer began to have axle problems and he took a Kentucky route because it was less hilly than his planned route. He testified that he had not checked Kentucky's road tax procedures.

Padilla testified that he pleaded guilty only because his wife, Ingrid, and daughter, Yoshii, were distraught over his potential prison sentence. Although he had previously rejected a similar plea agreement, on the day of trial he accepted. He testified that he was completely unaware that he would be deported and had been told by his trial counsel that deportation was not an issue because of his long-term residency in the United States. When asked if he would have pleaded guilty if he had been properly informed that he would be deported, Padilla responded that he would have insisted on a trial because deportation was the same as "putting a gun" to his head.

Trial counsel testified that he believed from the beginning of his representation that Padilla was an illegal alien and not a legal permanent resident. He further believed that because Padilla was a veteran who had lived in the United States for over forty years, he would not be deported. Although he could not specifically recall speaking with Padilla's wife or daughter regarding Padilla's possible deportation, he recalled attending a seminar regarding deportation consequences and consulting with an immigration attorney. He testified that he believed the evidence against Padilla*328 was strong and that he would not have succeeded at trial.

Testimony was also heard from Ingrid and Yoshii. Ingrid testified that she spoke to Padilla's trial counsel regarding Padilla's possible deportation and he informed her that because Padilla was a veteran who had lived in the United States for over forty years, he would not be deported. She testified that on the trial date, Padilla's trial counsel urged her to persuade Padilla to accept the plea offer. Ingrid agreed to do so because she understood that Padilla would not be deported and would be eligible for parole. If she had been informed that Padilla would be deported, she would have advised him to reject the offer.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

Yoshii also testified that there was no discussion indicating that Padilla would be deported. She stated that prior to accepting the plea offer, her father maintained he was innocent and insisted on a trial. She testified that if she had been informed that Padilla would be deported, she would have insisted that he go to trial.

In an extensive opinion and order, the circuit court focused on whether Padilla's decision to insist on a trial would have been "rational." The court concluded that there was such strong evidence of guilt, Padilla's choice would not have been rational and stated its reasoning:

A rational defendant facing trial with an overwhelming likelihood of conviction will try to mitigate the negative consequences. Regardless of the particular importance that might attach to deportation, it would be mandatory on conviction of an aggravated felony, as in this case. The only negotiable matter was the length of sentence, and this plea offered Padilla the minimum of five years to serve with remainder probated. A rational defendant would not have risked a sentence of ten years by insisting on going to trial in this case.

Having found that Padilla did not suffer actual prejudice by counsel's ineffective assistance, the circuit court denied Padilla's RCr 11.42 motion and, on the same basis, his CR 60.02 motion.

## ANALYSIS

[3][4][5][6] Although *Strickland* remains the seminal case regarding ineffective assistance of counsel claims, the prejudice inquiry has been necessarily modified in the context of a guilty plea challenge. The proper inquiry is whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). It is insufficient to merely state that with different advice, the movant would not have insisted on going to trial. "The test is objective, not subjective[.]" *Pilla v. United States,* 668 F.3d 368, 373 (6th Cir.2012). A reasonable probability exists if the defendant convinces the court "that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla,* 130 S.Ct. at 1485. This standard of proof is "somewhat lower" than the common "preponderance of the evidence" standard. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

[7] In challenging his guilty plea based upon ineffective assistance of counsel, Padilla had to demonstrate that his counsel's ineffective performance affected the outcome of the *plea process. Hill,* 474 U.S. at 59, 106 S.Ct. at 370. Stated differently, Padilla had to demonstrate that he rationally would have insisted on a trial, not that an acquittal at trial was likely. The Supreme Court has "never required an affirmative demonstration of likely acquittal at such a trial as the *sine qua non* of prejudice."**329** *United States v. Orocio,* 645 F.3d 630, 643 (3rd Cir.2011).

[8] Whether prejudice has been demonstrated under *Strickland* depends on the facts of a particular case. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have rejected the plea offer and insisted on going to trial. *Id.* (citing *Roe,* 528 U.S. at 480–481, 120 S.Ct. at 1036–1037 (2000)).

[9] The evidence of guilt and the potential sentence if convicted at trial compared to the consequences of a guilty plea are factors to be considered and, for a citizen defendant, may be the determinative factors in deciding to accept a plea offer. However, for a noncitizen defendant and, particularly a legal permanent resident facing deportation, the "stakes are ... high and momentous." *Delgadillo v. Carmichael,* 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17 (1947). It is the "equivalent of banishment or exile." *Id.* In *Padilla,* the Court stressed that preserving the noncitizen defendant's right to remain in the United States "may be more important to the [defendant] than any jail sentence." *Padilla,* 130 S.Ct. at 1483 (quoting *I.N.S. v. St. Cyr,* 533 U.S. 289, 322–323, 121 S.Ct. 2271, 2291, 150 L.Ed.2d 347 (2001)).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

[10] In *Orocio,* the Third Circuit echoed the Supreme Court's emphasis on the importance of preserving a legal permanent resident's right to remain in this country. Even when the chance of acquittal is slight, the decision to go to trial can be a rational choice.

For the [noncitizen] defendant most concerned with remaining in the United States, especially a legal permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries "presumptively mandatory" removal consequences. Just as the threat of [removal] may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does the threat of removal provides an equally powerful incentive to go to trial if a plea would result in removal anyway.

*Orocio,* 645 F.3d at 645 (internal quotations and citations omitted). Likewise, we conclude that although not the exclusive factor when determining whether a particular defendant's decision to insist on a trial would have been rational, the immigration consequences of a guilty plea can be the predominate factor. *See Padilla,* 130 S.Ct. at 1483.

The court must determine whether the defendant's rejection of the plea offer would have been a rational choice, even if not the best choice. Necessarily, the court must consider the importance a particular defendant places upon preserving his or her right to remain in this country.[FN2] A noncitizen defendant with significant ties to this country may rationally be willing to take the risk of a trial while the same decision by one who has resided in the United States for a relatively brief period of time or has no family or employment in this country may be irrational.

FN2. We reiterate that Padilla is a legal permanent resident and was not deportable prior to entering his plea.

Padilla left Honduras as a teenager and, except for a two week visit, has never returned. He is now fifty years old, a **330 lawful permanent resident of the United States, and has resided in this country for over four decades. He is a self-employed truck driver providing support for his wife and three disabled children, who are citizens of this country. Additionally, he has three adult children in this country. At the RCr 11.42 hearing, he testified that pleading guilty and facing certain deportation was essentially "putting a gun" to his head and, if he had known of the deportation consequences, he would have insisted on going to trial. Padilla's wife and daughter confirmed that Padilla's banishment from this country was a death sentence for their life as a family.

Although the evidence against Padilla is strong, it is far from conclusive. A reasonable jury could find that Padilla was unaware that the load he transported contained marijuana and acquit him of the deportable offense. [FN3] Padilla testified that he had no right to inspect the contents of the load he transported and was unaware that he was transporting marijuana. Under the facts, it would be reasonable for counsel to argue to a jury that Padilla's actions were inconsistent with a person who had knowledge of the load's contents. Arguably, had he known, he would have paid Kentucky's road taxes to avoid an investigative stop and possible search. Moreover, a reasonable juror could conclude that if Padilla was aware of the substantial amount of marijuana he was transporting, he would have placed it securely in the front of the trailer behind the legal load he transported, instead of the rear where it would be revealed merely upon opening the trailer's doors.

FN3. To be found guilty of trafficking, a jury would have to find that Padilla knowingly trafficked in marijuana. KRS 218A.1421.

Finally, Padilla's plea bargain was not as favorable as he believed. Although, if tried and convicted, he faced a maximum of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 S.W.3d 322

(Cite as: 381 S.W.3d 322)

ten-years' incarceration, under the plea agreement he was sentenced to ten-years' imprisonment, with five years to serve and five years probated. Based on the testimony at the RCr 11.42 hearing, Padilla accepted the offer on the day of trial only because he believed he would be not be deported and released on parole. However, Padilla would later learn that he faced deportation, was not eligible for parole, and was required to serve his entire sentence.

Accepting the plea agreement rendered Padilla mandatorily deportable. If he had insisted on a trial, the Commonwealth would have had to prove his guilt beyond a reasonable doubt, and Padilla would have a chance of avoiding a conviction that subjected him to mandatory deportation. Moreover, had the immigration consequences of Padilla's plea been factored into the plea bargaining process, trial counsel may have obtained a plea agreement that would not have the consequence of mandatory deportation. *Padilla,* 130 S.Ct. at 1486. In light of Padilla's particular circumstances, taking such a chance would have been rational.

There was substantial evidence that had Padilla been properly informed that if he pleaded guilty he faced mandatory deportation, he would have insisted on going to trial. Under the circumstances, his decision would have been rational. Because we are vacating Padilla's conviction, he can be tried and, if convicted, faces the maximum sentence and deportation. However, for Padilla, exile is a far worst prospect than the maximum ten year sentence.

For the forgoing reasons, the case is remanded to the Hardin Circuit Court for **331** an order vacating Padilla's judgment and conviction.

ALL CONCUR.

Ky.App.,2012.

Padilla v. Com.
381 S.W.3d 322
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.